IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHAHDAD C. BOLOURI,               ) | |
| ) | |
| Plaintiff,               ) | |
| ) | |
| v.               ) | Civil Action No. 1:10-cv-00225 |
| ) | (LO/TCB) |
| ) | |
| BANK OF AMERICA, N.A., *et al.*,               ) | |
| ) | |
| Defendants.               ) | |
| ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Bank of America, N.A. ("BOA") and JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Washington Mutual Bank ("Chase"),[1]

---

[1] On September 25, 2008, the United States Office of Thrift Supervision seized Washington Mutual Bank ("WaMu") from Washington Mutual, Inc. and placed it into the receivership of the FDIC. The FDIC sold the assets and certain liabilities of WaMu to Chase that same day pursuant to a written "Purchase and Assumption Agreement" ("PAA"). Any claims against Chase are strictly limited to only those violations arising out of facts post-dating the September 25, 2008 PAA. The PAA is a publicly available document located online at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. The PAA provides in pertinent part:

> 2.5   Borrower Claims: Notwithstanding anything to the contrary in this Agreement, *any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower*, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, *related in any way to any loan or commitment to lend made by the Failed Bank [WaMu] prior to failure [September 25, 2008]*, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities *are specifically not assumed by the Assuming Bank [Chase]*.

Chase reserves the right to move to dismiss any claims Plaintiffs attempt to assert against it that arise out of any acts, omissions, or violations occurring prior to September 25, 2008.

(collectively, the "Defendants"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(6), submit the following memorandum in support of Motion to Dismiss Plaintiff's Amended Complaint.

## INTRODUCTION

This lawsuit is an improper attempt to stall and delay the rightful foreclosure and possession of a secured property. Plaintiff admits that he is in default on a $1.2 million promissory note. He admits that signed a deed of trust placing a security interest in the property at issue. Plaintiff's claims for declaratory judgment, negligence, and quiet title are essentially the same type of "show me the note" claim that this Court and other courts have repeatedly ruled is contrary to the non-judicial foreclosure laws of Virginia and the terms of the deed of trust. Furthermore, even if Plaintiff could state a "show me the note" claim, the Defendants are in possession of the original blank-indorsed promissory note, and, therefore, they clearly have authority to foreclose on the property due to Plaintiff's admitted default. Plaintiff's FDCPA claim against co-defendant Professional Foreclosure Corporation is contrary to the facts and has no effect whatsoever on Defendants' authority to foreclose on the property. This action should be dismissed with prejudice in its entirety.

## ALLEGED FACTS[2]

1. On December 13, 2005, Plaintiff executed a promissory note (the "Note") and deed of trust (the "Deed"), which placed a security interest in the property at issue ("Property"). (Am. Compl., ¶¶ 7-10). Defendants attach hereto complete and accurate copies of the Note and

---

[2] The "Alleged Facts" section is based upon the allegations contained in the original Complaint and Amended Complaint. Although Defendants disagree with Plaintiffs' claims, for limited purpose of this motion, the sparse factual allegations contained in the original Complaint and Amended Complaint are taken as true. The original Complaint and Amended Complaint shall be cited as "Compl., ¶ ___" and "Am. Compl., ¶ ___," respectively.

2

Deed as **Exhibits A** and **B**, respectively.[3] <u>At the request of Defendants, co-defendant Professional Foreclosure Corporation of Virginia ("PFC") currently retains possession of the original Note bearing Plaintiff's ink signature and Wamu's blank indorsement (*see infra*, ¶ 2). Counsel for Defendants will produce these original documents for inspection by the Court or Plaintiff's Counsel upon request.</u>

2. The Note contains a blank indorsement signed by Wamu's Vice President Cynthia Riley stating:

> Pay to the order of
>
> Without Recourse
> WASHINGTON MUTUAL BANK, FA
>
> By _____
> CYNTHIA RILEY
> VICE PRESIDENT

(Ex. A, 5).

3. The Loan was allegedly securitized and allegedly became part of a "pool of securitized mortgage and asset backed securities." (Compl., ¶¶ 12-13).

4. Plaintiff alleges that Defendant BOA is the trustee of a loan pool trust into which the Note was allegedly incorporated. (Compl., ¶ 14).

5. Plaintiff alleges that Defendant Chase is the loan servicer. (Am. Compl., ¶ 3).

---

[3] A defendant may attach to a pleading documents relied upon by the complaint, and a court may consider those documents in ruling upon a Rule 12(c) motion. *See Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 577 (E.D. Va. 2006) (although the pleadings are the focus, "a court is not limited to the four corners of the complaint" and may also consider "any document that is explicitly relied upon in the complaint"); *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995), *aff'd*, 103 F.3d 351 (4th Cir. 1996) (holding that the court may consider "documents quoted, relied upon, or incorporated by reference in the complaint"). A plaintiff's failure to quote or attach the operative documents does not allow the plaintiff to escape the rule. "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment." *Gasner*, 162 F.R.D. at 282 (following "the great weight of authority").

6.  "Once Plaintiff was unable to pay" his mortgage loan payments, Plaintiff began receiving demands for payment and "threats of foreclosure" from Chase and co-defendant PFC on behalf of BOA. (Am. Compl., ¶¶ 13, 40).

7.  One of these alleged "demands for payment" was sent by PFC to Plaintiff on October 6, 2009. (Am. Compl., ¶ 13). A copy of the October 6, 2009 letter to Plaintiff is attached hereto as **Exhibit C**. The "Re:" line of the October 6, 2009 letter states: "Holder: BANK OF AMERICA NATIONAL ASSOCIATION." (Ex. C, 1). Attached to the October 6, 2009 letter is a "Notice Required by the Fair Debt Collections Practices Act, 15 U.S.C. Section 1692, *et seq.*" (the "FDCPA Notice"). The FDCPA Notice unequivocally states that "[t]he creditor to whom the debt is owed is BANK OF AMERICA NATIONAL ASSOCIATION." (Ex. C, 4) (emphasis in original).

8.  On October 8, 2009, BOA, through its loan servicer and attorney in fact, appointed co-defendant PFC as substitute trustee by executing, notarizing, and filing in the land records a Deed of Appointment of Substitute Trustee (Compl., ¶¶ 51, 52, 54, 55; Am. Compl., ¶¶ 23, 26), a copy of which is attached hereto as **Exhibit D.**

9.  On October 22, 2009, PFC notified Plaintiff of the foreclosure sale of the Property scheduled on November 13, 2009. (Am. Compl., ¶ 15).

10. In response, Plaintiff's counsel contacted PFC on November 4, 2009. (Am. Compl., ¶ 17). A copy of the email correspondences between Plaintiff's counsel and representatives of PFC is attached as **Exhibit E**.

11. In response to Plaintiff's counsel's email, a PFC representative forwarded Plaintiff's counsel a copy of the original Note and confirmed that PFC had the original Note "on

4

file in [PFC's] office, endorsed in blank." (Ex. E, 2). PFC's representative further stated that the foreclosure would proceed as scheduled. (Ex. E, 2).

12. Plaintiff filed this lawsuit on November 13, 2009, the same day as the foreclosure sale.

## STANDARD OF REVIEW

Defendants move for dismissal of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss tests the sufficiency of the plaintiff's initial pleading and does not resolve contests surrounding the facts or the merits of a claim. *See Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When considering a motion to dismiss, the Court should accept as true all well-pleaded factual allegations and should view the complaint in a light most favorable to the plaintiff. *See De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). The Court, however, need not accept as true the legal conclusions, unwarranted inferences, unreasonable conclusions, or arguments asserted in the complaint. *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Furthermore, a "pleading that offers 'legal conclusions' of 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Stidham v. Jackson*, 2:07-cv-00028, 2007 U.S. Dist. LEXIS 54032, *13 (W.D. Va. July 26, 2007) (legal conclusions "couched as factual allegations need not be accepted as true"); *Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D. Va. 1989) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct.

at 1949 (quoting *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is "factually plausible" when the claimant pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In *Iqbal*, the Supreme Court enunciated a "two-step test" for determining whether a complaint survives dismissal. 129 S. Ct. at 1949-50.

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Id.* (emphasis added). Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. If any factual allegations remain, the Court should then review them to determine if the plaintiff has stated a plausible claim for relief. *Id.*

## ARGUMENT

**I.     Plaintiff's claims for declaratory judgment, negligence, and quiet title (Counts I, II, and III) must be dismissed because they are contrary to Virginia's foreclosure laws and contrary to the evidence already before the Court.**

Plaintiff's claims for declaratory judgment, negligence, and quiet title should be dismissed because all three claims are essentially "show me the note" claims that are contrary to Virginia's non-judicial foreclosure laws and the terms of the Deed of Trust. Furthermore, Defendants' possession of the blank-indorsed Note conclusively proves Defendants' authority to foreclose on the Property.

### A. Plaintiff's "show me the note" claims are contrary to Virginia's non-judicial foreclosure statutes.

Plaintiff essentially seeks to turn Virginia, a non-judicial foreclosure state, into a judicial foreclosure state. In support of his claim for declaratory judgment, Plaintiff asserts -- without any factual support -- that BOA has no right or interest in the Property and lacks "standing . . . to effectuate a valid and legal foreclosure." (Am. Compl., ¶¶ 45, 46). Plaintiff's negligence claims are based on the allegation that that BOA and Chase lacked authority to appoint substitute trustees. (Am. Compl., ¶¶ 51, 52). Likewise, in support of his quiet title claim, Plaintiff alleges that Defendants lack authority to appoint the substitute trustee. (Am. Compl., ¶¶ 56-58). Therefore, in order to disprove Plaintiff's factually unsupported legal conclusions, Defendants must "show the note." Thus, Plaintiff's demand that the Defendants must show the note and prove their authority to foreclose in a court of law is in direct contradiction of Virginia's non-judicial foreclosure laws and the terms of the Deed of Trust.

Virginia is a non-judicial foreclosure state. Virginia Code § 55-59(7) states the authority of the trustee to foreclose and sell property provided as security for a loan.

> In the event of default in the payment of the debt secured, or any part thereof, at maturity, or in the payment of interest when due, or of the breach of any of the covenants entered into or imposed upon the grantor, then at the request of any beneficiary the trustee shall forthwith declare all the debts and obligations secured by the deed of trust at once due and payable and may take possession of the property and proceed to sell the same at auction . . . .

Sections 55-59.1 through 55-59.4 set forth the procedural requirements for the non-judicial foreclosure sale (i.e., notices and advertisements). Furthermore, in this action, the Deed of Trust (Ex. B) clearly confers authority on the Defendants to foreclose on the Property upon Plaintiff's default:

7

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to reasonable attorneys' fees and costs of title evidence.
>
> If Lender invokes the power of sale, . . . Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines.

(Ex. B, ¶ 22). In the Note, Plaintiff agreed that

> This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.

(Ex. A, ¶ 10). Thus, Plaintiff explicitly agreed and understood that the Property would be foreclosed upon in the event that he defaulted on his loan repayment obligations. Plaintiff has admitted that he is unable to pay his loan repayment obligations. (Am. Compl., ¶ 40). Plaintiff now demands -- in direct contradiction to Virginia foreclosure law and the terms of the Deed of Trust and Note -- that Defendants "show the note" in a court of law prior to foreclosing on the Property.

This Court has ruled that Virginia's foreclosure laws do not require foreclosing entities to prove their "standing" or authority to foreclose in a court of law prior to foreclosure. In *Pazmino v. LaSalle Bank, N.A.*, 2010 U.S. Dist. LEXIS 50306, *18-19 (E.D. Va. May 20,

2010), the Court addressed the exact same erroneous legal theory under nearly identical factual circumstances (i.e., a borrower in default facing foreclosure). The Court ruled:

> The Court rejects Plaintiff's standing argument to the extent that Plaintiff uses the term "standing" to refer to a requirement that a secured party first prove in court its right to initiate a foreclosure before the proceedings commence. The fundamental flaw in Plaintiff's argument is that Virginia is a non-judicial foreclosure state. [Virginia Code] Sections 55-59.1 through 55-59.4, which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove "standing" in a court of law before initiating the foreclosure process.

*Id.* Similarly, other courts in non-judicial foreclosure states have consistently rejected borrowers' "show me the note" claims where, as in this case, it is clear that the applicable foreclosure laws and loan documents give the Defendants authority to foreclose and the borrower has defaulted on the loan.[4]

Here, Plaintiff bases his claims on the same, erroneous legal theory that the Defendants must prove their authority in a court of law prior to foreclosing on the Property. Contrary to Plaintiff's allegations, neither the foreclosure statutes nor the Deed of Trust require the secured party to prove "standing" in a court of law prior to foreclosure. Indeed, such a

---

[4] *See, e.g., Mansour v. Cal-Western Reconveyance Corp.*, No. CV-09-37-PHX-DGC, 2009 U.S. Dist. LEXIS 64113 (D. Ariz. July 15, 2009) (dismissing borrowers' claims to void foreclosure sale because law does not require proof of actual possession of note to initiate non-judicial foreclosure proceedings); *Derakhshan v. Mortgage Electronic Registration Sys., Inc.*, SACV08-1185 AG (RNBx) (C.D. Cal. June 29, 2009) (dismissing *inter alia* borrowers' claims for injunctive and declaratory relief to stop collection and foreclosure efforts because loan documents clearly indicated defendants had standing and authority to foreclosure upon borrower's default); *Farahani v. Cal-Western Reconveyance Corp.*, C 09-194 JF (RS), 2009 U.S. Dist. LEXIS 42344 (N.D. Cal. May 7, 2009) (dismissing borrower's claims for declaratory relief, injunctive relief, and quiet title because each relied on the erroneous allegation that "the Defendants had no authority to foreclose on the property because they were not in possession of the deed"); *Elias vv. HomeEQ Servicing*, 2:08-CV-1836 JCM (PAL), 2009 U.S. Dist. LEXIS 14907 (D. NV. Feb. 25, 2009) (dismissing borrowers' claims for wrongful and negligent foreclosure and quiet title because loan documents "confirm[ed] the standing of [Loan Servicer], [Loan Assignee], and MERS to foreclose upon [borrower's] default," therefore, "defendants did not wrongfully foreclose on [the] property"); *Pfannenstiel v. Mortgage Electronic Registration Sys., Inc.*, CIV S-08-2609 MCE DAD PS, 2009 U.S. Dist. LEXIS 10010 (E.D. Cal. Feb. 9, 2009) (dismissing borrower's claims for declaratory relief, fraud, conspiracy to defraud, to set aside fraudulent foreclosure sale, slander of title, and conversion because "deed of trust include[d] a power-of-sale clause that permitted non-judicial foreclosure when plaintiff defaulted on the loan").

9

requirement would defeat the purpose of a *non*-judicial foreclosure statute. Furthermore, Plaintiff does not allege any procedural impropriety in the foreclosure. Virginia's deed of trust-based non-judicial foreclosure procedure is designed to avoid the "inevitable incidents of expense, delay and complexity" of a lawsuit, and, therefore, the "solemnity of a deed of trust" will not be set aside without "compelling circumstances." *Perdue v. Davis*, 176 Va. 102, 108 (1940). Plaintiff's attempt to circumvent the laws of Virginia must be rejected by this Court and his claims should be dismissed with prejudice.

### B. Defendants' authority to foreclose on the Property is proven by the face of the Note.

Plaintiff's claims fail also because the face of the Note conclusively proves that Defendants have authority to foreclose on the Property upon Plaintiff's default. There is no dispute that Plaintiffs entered into the loan evidenced by the Note and secured by the Deed of Trust placing a security interest in the Property. (Am. Compl., ¶¶ 7-10). The originating lender was Wamu. (Am. Compl., ¶ 11). After origination, Wamu negotiated the Note by indorsing it "in blank" and delivering physical possession of the original Note to Defendants. (Ex. A, 6). Indeed, Plaintiff's counsel was aware that co-defendant PFC possessed the original Note indorsed in-blank *prior to filing this action*. (Ex. E, 2). As stated in Defendant's prior motion, Plaintiff's counsel may inspect the original Note at a mutually agreeable date and time.

Persons entitled to enforce a negotiable instrument include the "holder of the instrument." Va. Code § 8.3A-301. As the originating lender, Wamu was the holder of the Note and entitled to enforce the debt obligation against Plaintiff. Wamu's "blank indorsement" converted the Note into "bearer paper." Va. Code § 8.3A-205(b). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated *by transfer of possession alone* until specially indorsed." *Id.* (emphasis added). Thus, Wamu's blank indorsement and delivery

of the original Note rendered Defendants holders of the instrument entitled to enforce its terms against Plaintiff.

At the same time, negotiation of the Note carried with it the equitable security of the Deed of Trust. *See, e.g., Williams v. Gifford*, 139 Va. 779, 784 (1924) ("[I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it."); *Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Therefore, the Note continued to be secured and Defendants were entitled to enforce the terms of the Deed of Trust, including the power to invoke the sale of the Property upon Plaintiff's default.

This Court recently addressed this exact same issue in two nearly identical actions, ruling that the holder of a blank-indorsed note was entitled to enforce the note pursuant to the deed of trust and foreclose on the property at issue. *Larota-Florez v. Goldman Sachs Mortgage Co.*, 2010 U.S. Dist. LEXIS 35099 (E.D. Va. April 8, 2010); *Areebuddin v. OneWest Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 28469 (E.D. Va. March 24, 2010). Like the Plaintiff here, the claimant in *Areebuddin* claimed that the foreclosing entities lacked authority to foreclose because they were mere holders of the note. Like the Note at issue here, the promissory note in *Areebuddin* contained a blank indorsement. 2010 U.S. Dist. LEXIS 28469, at *3-4. The Court ruled:

> [I]f an instrument has a blank endorsement, it is considered "payable to bearer," and it may be negotiated by transfer of possession alone. *See* Va. Code §§ 8.3A-201(b) & 8.3A-205. In this case, the face of the Note shows that the Note has a blank endorsement. . . . Accordingly, it may be negotiated by a simple change in possession and enforced by its current holder, OneWest.

11

*Id.* at *8-9. Therefore, the Court ruled that the foreclosing entity had authority to invoke the power of sale under the deed of trust. *Id.* at *10-11 (citing *inter alia Williams v. Gifford, supra*, and rejecting claimant's theory regarding a "split" between the note and deed).

Again, in *Larota-Florez*, the Court held that possession of a promissory note indorsed in-blank conclusively proves a party's authority to foreclose. During the foreclosure process, the loan servicer in *Larota-Florez* produced the original note with blank indorsement to the substitute trustee. 2010 U.S. Dist. LEXIS 35099, at 4-6. The Court held:

> [The substitute trustee] is in possession of the original First Note and Deed of Trust, including the endorsement "in blank" by [the originating lender]. Therefore, as the holder of the negotiable instrument, [the substitute trustee] has authority to foreclose under established Virginia law even without the Appointment of Substitute Trustee.

*Id.* Likewise, Defendants in this action are in possession of the original, blank-indorsed Note. Ex. A. Therefore, they are entitled to enforce the terms of the Note and Deed of Trust based on Plaintiff's admitted failure to meet his repayment obligations. (Am. Compl., ¶ 40). Accordingly, Plaintiff's declaratory judgment, negligence, and quiet title claims -- all of which are based on an alleged lack of authority to foreclose -- fail as a matter of law and must be dismissed.

Furthermore, Plaintiff's claims are particularly egregious in light of the fact that Plaintiff's counsel knew that the Defendants had produced to PFC the original blank-indorsed Note *prior to initiating this action or filing the Amended Complaint*. On November 4, 2009, Plaintiff's counsel contacted PFC and demanded that it halt the foreclosure sale. (Ex. E). PFC responded by forwarding a copy of the Note to Plaintiff's counsel and informing him that it had physical possession of the original blank-indorsed Note. (Ex. E). Nonetheless, Plaintiff filed this action and the Amended Complaint with full knowledge that the Defendants possess the

original Note. Plaintiff has improperly stalled and delayed the foreclosure long enough. His claims should be dismissed with prejudice.

**II.     Plaintiff's FDCPA claim against PFC fails and has no effect on Defendants' authority to foreclose.**

Plaintiff asserts his FDCPA claim against co-defendant PFC, and not against Defendants. (Am. Compl., ¶¶ 60-63). Nonetheless, Defendants note that the FDCPA should have no effect whatsoever on Defendants' authority to foreclose for two reasons. First, the claim is contrary to the facts. The sole basis for Plaintiff's FDCPA claim is the allegation that co-defendant PFC "violated the FDCPA by failing to identify the proper creditor." But PFC, in its October 6, 2009 letter to Plaintiff expressly stated that the "[t]he creditor to whom the debt is owed is BANK OF AMERICA NATIONAL ASSOCIATION." (Ex. C, 4) (emphasis in original). Therefore, Plaintiff's claim is simply contrary to the facts and must be dismissed.

Furthermore, even if Plaintiff could state a claim for violation of the FDCPA against PFC, it would not affect Defendants' authority to foreclose on the Property. The FDCPA provides specific remedies for violations. It does not provide a mechanism for Plaintiff stay in the Property 100% rent-free after defaulting on his $1.2 million mortgage loan. Defendants are entitled to foreclosure on the Property at this time.

## CONCLUSION

WHEREFORE, Defendants Bank of America, N.A. and JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint and enter an Order dismissing with prejudice all of Plaintiff's claims against them and granting whatever other legal or equitable relief the Court deems appropriate.

                                          **JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank**

                                          **BANK OF AMERICA, N.A.**

                                          By:   /s/ Jon S. Hubbard
                                                     Of Counsel

John C. Lynch, Esquire
Virginia State Bar No. 39276
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
E-mail: jon.hubbard@troutmansanders.com

      *Counsel for Defendant JPMorgan Chase Bank, N.A.*
      *as acquirer of certain assets and liabilities of*
      *Washington Mutual Bank from the Federal Deposit*
      *Insurance Corporation, as Receiver for*
      *Washington Mutual Bank and*
      *Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

>Christopher E. Brown, Esq.
>R. Michael Smith, Esq.
>6269 Franconia Road
>Alexandria, VA 22310
>Tel: (703) 924-0223
>Fax: (703) 924-1586
>Email: brownfirm@lawyer.com
>*Counsel for Plaintiff*

I further certify that on the 25th day of June, 2010, a true and correct copy of the foregoing was sent via U.S. mail to the following:

>Professional Foreclosure Corporation of Virginia
>c/o John Burson, Esq.
>13135 Lee Jackson Memorial Highway
>Fairfax, VA 22033

>/s/ Jon S. Hubbard
>Jon S. Hubbard, Esquire
>Virginia State Bar No. 71089
>TROUTMAN SANDERS LLP
>1001 Haxall Point
>P.O. Box 1122
>Richmond, Virginia 23218-1122
>Telephone: (804) 697-1406
>Facsimile: (804) 698-5186
>E-mail: jon.hubbard@troutmansanders.com

1954535v1