**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| CHAHDAD C. BOLOURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:10-cv-00225 (LO/TCB) |
| | ) |
| BANK OF AMERICA, N.A., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Bank of America, N.A. ("BOA") and JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Washington Mutual Bank ("Chase"),[1] (collectively, the "Defendants"), by counsel, pursuant to Fed. R. Civ. P.

---

[1] On September 25, 2008, the United States Office of Thrift Supervision seized Washington Mutual Bank ("WaMu") from Washington Mutual, Inc. and placed it into the receivership of the FDIC. The FDIC sold the assets and certain liabilities of WaMu to Chase that same day pursuant to a written "Purchase and Assumption Agreement" ("PAA"). Any claims against Chase are strictly limited to only those violations arising out of facts post-dating the September 25, 2008 PAA. The PAA is a publicly available document located online at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. The PAA provides in pertinent part:

> 2.5   Borrower Claims: Notwithstanding anything to the contrary in this Agreement, *any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower*, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, *related in any way to any loan or commitment to lend made by the Failed Bank [WaMu] prior to failure [September 25, 2008],* or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities *are specifically not assumed by the Assuming Bank [Chase].*

12(b)(6), submit this reply memorandum in support of Motion to Dismiss Plaintiff's Amended Complaint.

### INTRODUCTION

Plaintiff admits he entered into a $1.2 million loan secured by a deed of trust (the "Deed of Trust") placing a lien on the property at issue. Plaintiff admits he has stopped paying his monthly mortgage payments and that he was notified of the impending foreclosure. Thus, the Defendants properly initiated a non-judicial foreclosure on the property at issue (the "Property"). The true motive for this lawsuit, however, is Plaintiff's desire to shirk his contractual obligation to repay the $1,209,000 promissory note (the "Note") and, at the same, remain in the secured property free of charge. Plain and simple. In order to achieve this goal, Plaintiff must turn Virginia into a judicial foreclosure state; ignore Defendants' possession of the blank-indorsed Note; rely on bogus and discredited legal theories (i.e., double recovery, etc.); and ignore the long and growing list of recent decisions by this Court dismissing with prejudice identical claims by borrowers asserting identical facts. Plaintiff's Amended Complaint should be dismissed with prejudice in its entirety.

---

Chase reserves the right to move to dismiss any claims Plaintiffs attempt to assert against it that arise out of any acts, omissions, or violations occurring prior to September 25, 2008.

## ARGUMENT

**I.  Plaintiff's theories regarding "standing" are contrary to law and have been rejected by this Court.**

Plaintiff's legal theories regarding "standing" are fatally flawed in two ways.  First, Plaintiff lacks "standing" to file a "show me the note" claim in a non-judicial foreclosure state such as Virginia.  Second, the legal concept of "standing" does not apply to Defendants' enforcement of their rights under the Deed of Trust.

**A.  Plaintiff lacks standing to file a "show me the note" claim.**

As stated in Defendants' supporting memorandum, Plaintiff's "show me the note" claim is contrary to the terms of the Deed of Trust and Virginia's non-judicial foreclosure laws.  (Defs' Memo., 7-10).  Plaintiff's "real quarrel is with Virginia's status as a non-judicial foreclose state." *Merino v. EMC Mortgage Corp.*, No. 1:09-cv-1121, 2010 U.S. Dist. LEXIS 26539, *16 (E.D. Va. March 19, 2010).  Thus, Plaintiff lacks standing to file an action against Defendants to determine *if* Defendants are authorized to foreclose on the Property.  Plaintiff agreed to and signed the Deed of Trust, in which Plaintiff agreed that any foreclosure proceedings would be handled by a trustee.  Plaintiff cannot now claim that the foreclosure should be conducted by the Court.

In response, Plaintiff erroneously relies on the Due Process clauses of the U.S. and Virginia Constitutions.  (Plf's Memo., 7-8).  But this same theory was already attempted by borrowers and rejected by this Court and the Fourth Circuit more than thirty years ago.  *See Levine v. Stein*, 560 F.2d 1175 (4th Cir. 1977) (affirming this Court's dismissal of claim that Virginia's non-judicial foreclosure statute violated constitutional due process).  This Court recently followed this precedent in a nearly identical action.

*See Zambrano v. HSBC Bank USA, Inc.*, No. 01:09-cv-996, 2010 U.S. Dist. LEXIS 51371, *6-7 (E.D. Va. May 25, 2010) (noting dismissal of due process claim). Plaintiff cannot rely on the Due Process clause for standing.

Plaintiff's reliance on *Tiemeyer v. Residential Credit Solutions, Inc.* is also misplaced. (Plf's Memo., 9-10). Plaintiff claims that "[a] [h]omeowner has the right to challenge an entity's standing the 'secured party.'" (Plf's Memo., 9). Plaintiff supports this conclusion by citing *Tiemeyer* and asserting that, "[i]f a homeowner were not able to challenge an entity's 'standing' as the 'secured party' then the VA Supreme Court would not have granted the Petition for Review." (Plf's Memo., 9-10). Plaintiff's characterization of the Supreme Court of Virginia's decision to remand the case is misleading and wrong. *Tiemeyer* involved a foreclosure pursuant to a lost note affidavit. Here, Defendants possess the original Note executed by Plaintiff. Thus, *Tiemeyer* is both factually and legally distinguishable.[2]

Moreover, the issue of the borrower's standing in *Tiemeyer* was not even before the Court. This is because Virginia's foreclosure laws allow the borrower of a lost note to "petition the circuit court . . . for an order requiring the beneficiary to provide adequate protection" in certain circumstances. Va. Code § 55-59.1. Here, Defendants' possess the original Note and, therefore, Plaintiff cannot petition any court for adequate protection. Thus, Plaintiff cannot rely on *Tiemeyer* to support his ability to assert a "show me the note" claim.

Plaintiff also asserts that "where the homeowner *files a civil action* challenging an entities [sic] authority to proceed under VA Code § 55-59, then they must

---

[2] Plaintiff's counsel, Christopher Brown, serves as counsel to claimants in *Tiemeyer*. The Virginia circuit court in *Tiemeyer* ultimately ruled against Mr. Brown's clients and dismissed their claims.

prove it." (Plf's Memo., 8) (emphasis in original). There is simply no support for this assertion. On the contrary, it is well settled that *any* claimant -- including homeowners and borrowers facing foreclosure -- must base their claims on sufficient factual allegations indicating a plausible claim for relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ruling a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Plaintiff cannot avoid the requisite pleading standard simply by virtue of his status as a homeowner.

    **B.    Plaintiff's theory that Defendants lack "standing" has been rejected by this Court.**

Plaintiff alleges that Defendants must come to court and prove their "standing" prior to exercising their rights to foreclose. (Plf's Opp., 5, 11-12). As noted in Defendants' supporting memorandum, this Court has rejected this very same claim in cases involving nearly identical facts. (Defs' Memo., 8-9) (citing *Pazmino v. LaSalle Bank, N.A.*, 2010 U.S. Dist. LEXIS 50306, *18-19 (E.D. Va. May 20, 2010) (ruling that "[t]he fundamental flaw in Plaintiff's argument is that Virginia is a non-judicial foreclosure state. [Virginia Code] Sections 55-59.1 through 55-59.4, which set forth the procedural requirements for a non-judicial foreclosure, do not require an interested party to prove "standing" in a court of law before initiating the foreclosure process.")). Thus, Plaintiff's "standing" argument is based on a misunderstanding of the law that has already been rejected by the Court.

## II. Defendants may enforce their rights under the Deed of Trust by virtue of their ownership and possession of the blank-indorsed Note.

In his Opposition Memorandum, Plaintiff spends a great deal of time arguing that Virginia's version of the Uniform Commercial Code ("UCC") does not apply in this matter because Defendants are enforcing their *in rem* remedies to the Property under the Deed of Trust, rather than asserting an *in personam* claim against Plaintiff under the Note. (Plf's Opp., 8 ("UCC does not govern enforcement of the Deed of Trust."), 12-13 (UCC does not apply)). Plaintiff misunderstands Defendants' position. Defendants agree that they are enforcing their rights under the Deed of Trust and not suing for collection on the Note. Pursuant to the terms of the Deed of Trust and Virginia's foreclosure laws, Defendants are authorized to enforce their rights through a non-judicial foreclosure proceeding with a trustee. However, Plaintiff has improperly frustrated Defendants' rightful foreclosure by filing a frivolous and unsupported legal action demanding Defendants to "show the note" in a court of law prior to foreclosure.

As Defendants have argued, Plaintiff's "show me the note" claim fails as a matter of law. However, out of an abundance of caution, Defendants have "shown the note," and, therefore, proven their authority to foreclose under the Deed of Trust. Plaintiff is partially correct, in that Defendants, by invoking the power of sale, are enforcing their rights and authority to commence a non-judicial foreclosure under the Deed of Trust, as opposed to the Note. However, nothing prevents Defendants from using the UCC to prove their entitlement to collect on the Note. Furthermore, because Defendants have proven that they may collect on the Note, they have also proven that they may enforce the Deed of Trust against the Property. It is well-settled law in Virginia that negotiation of a promissory note carries with it the equitable security of a deed of

trust. *See*, *e.g.*, *Williams v. Gifford*, 139 Va. 779, 784 (1924) ("[I]n Virginia, as to common law securities, the law is that both deeds of trust and mortgages are regarded *in equity* as mere securities for the debt and whenever the debt is assigned the deed of trust or mortgage is assigned or transferred with it."); *Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886) ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Here, Defendants' physical possession of the blank-indorsed Note bearing Plaintiff's original ink signatures conclusively proves their authority to enforce the Deed of Trust. Therefore, there is no reason for the Defendants to prove their authority via Virginia property law or contract law since they have already shown the Note with a blank indorsement.

Plaintiff asserts that the Note limits enforceability to only those parties who receive the Note "by transfer *and* who [are] entitled to receive payments." (Plf's Memo., 7, 17) (emphasis in original). But, the facts and applicable law show that (1) the Defendants received the Note "by transfer" (i.e., they have possession) and (2) they are entitled to receive payments (due to the blank-indorsement). If, on the other hand, Defendants had merely received possession of a note bearing a special indorsement to a third-party, they may not be "entitled to receive payments." The blank-indorsement, however, renders the note into "bearer paper," which, for all intents and purposes, means that the Note has the same characteristics as cash. In other words, *anyone* who takes possession of the blank-indorsed Note may enforce it terms. Plaintiff's theories are based on a simple misunderstanding of UCC and pre-UCC law of negotiable instruments.

### III. Virginia law does not require recordation of assignments of promissory notes.

Plaintiff repeatedly asserts that there is no evidence of a "proper assignment" of the underlying debt obligation. (Plf's Opp., 14 (alleging a "break in the chain of title"), 15-16 (no evidence of a "proper assignment"), 18-19 (urging the court to endorse a "secured party test" requiring proof of assignment)). Of course, Plaintiff's assertions ignore the fact that Defendants possess the original Note indorsed in-blank. Thus, there is no need for Defendants to produce more evidence of their authority to foreclose since possession of the blank-indorsed Note proves a "proper assignment" for enforcement purposes. Furthermore, Plaintiff's demand would effectively require noteholders to record assignments and transfers of notes -- even though Plaintiff admits that "the recording of assignments is not required in" Virginia pursuant to Va. Code § 55-66.01. (Plf's Opp., 14).

Plaintiff's "Secured Party" test (Plf's Opp., 18-19) is a complete fabrication that is not supported by any statutory or judicial authority. Furthermore, as stated *supra*, this Court has already ruled that possession of a blank-indorsed note entitles the possessor to enforce the security instrument against the borrower in default. *Larota-Florez v. Goldman Sachs Mortgage Co.*, 2010 U.S. Dist. LEXIS 35099, *4-6 (E.D. Va. April 8, 2010); *Areebuddin v. OneWest Bank, F.S.B.*, 2010 U.S. Dist. LEXIS 28469, *3-4 (E.D. Va. March 24, 2010). Plaintiff's attempt to create a new "test" -- which basically requires Defendants to produce more than a blank-indorsed note -- should be rejected by the Court.

**IV.   Bank of America properly appointed the substitute trustee.**

Plaintiff attacks BOA's appointment of the substitute trustee (Professional Foreclosure Corporation, "PFC") by asserting that "BOA was not the beneficiary of greater than 50% of the obligations due under the Note." (Plf's Opp., 16). But, Plaintiff's allegation is nothing more than a legal conclusion that is not based on any factual allegation in the Amended Complaint. Therefore, it cannot withstand Defendants' motion to dismiss. *See Twombly*, 550 U.S. at 555 (ruling a complaint must contain sufficient factual matter to survive dismissal). Moreover, Plaintiff once again ignores the fact that Defendants possess the blank-indorsed Note. As this Court has ruled in cases involving identical facts, the owner of the blank-indorsed note has authority to appoint the substitute trustee. *Larota-Florez*, 2010 U.S. Dist. LEXIS 35099, at *4-6 ("[The substitute trustee] is in possession of the original First Note and Deed of Trust, including the endorsement "in blank" by [the originating lender]. Therefore, as the holder of the negotiable instrument, [the substitute trustee] has authority to foreclose under established Virginia law even without the Appointment of Substitute Trustee.").

**V.   Plaintiff's theories regarding "double recovery," "credit enhancements," and credit default swaps have already been rejected by the Court.**

Once again, Plaintiff relies on the same erroneous and discredited legal theories that he previously asserted in his original Complaint. Over the past 10 months, this Court has rejected these exact same theories in multiple rulings. *Merino*, 2010 U.S. Dist. LEXIS 26539, at *16 ("'[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any losses caused by that default or 'credit enhancements,' he is discharged from the promissory notes and the Property is released from the deeds of trust.'") (quoting

9

*Horvath v. Bank of New York, N.A.*, No. 1:09-cv-01129 (E.D. Va. Jan. 29, 2010)). Plaintiff gives no reason why the Court should now depart from its prior rulings.

### VI. Plaintiff's FDCPA claims (i) have no effect on Defendants' right to foreclose; and (ii) are contrary to the facts.

Plaintiff's FDCPA claims against co-defendant PFC have no effect whatsoever on Defendants' authority to foreclose on the Property. Even if PFC violated the FDCPA, Defendants have authority to foreclose on the Property. Furthermore, the basis for Plaintiff's FDCPA claim is contradicted by the factual record. Plaintiff claims that PFC told him that the foreclosing entity was Chase, not BOA. (Plf's Opp., 22). However, as shown in Defendants' supporting memorandum (Defs' Memo., 13), PFC informed Plaintiff in an October 6, 2009 letter that the foreclosing entity was BOA. Plaintiff's Opposition Memorandum does not even attempt to address this fact. Therefore, because Plaintiff's FDCPA claim is factually inaccurate, the Court should dismiss the claim with prejudice.

#### CONCLUSION

Northern Virginia is currently experiencing a groundswell of lawsuits in which borrowers who have defaulted on their mortgage repayment obligations seek to avoid foreclosure and eviction by attacking the lending industry in general and/or attempting to overturn Virginia's non-judicial foreclosure laws. *See Merino*, 2010 U.S. Dist. LEXIS 26539, at *16 ("In the end, it is apparent to the Court that Plaintiffs' real quarrel is with Virginia's status as a non-judicial foreclosure state."); *Peter Veith, Fighting Foreclosure, Va. Lawyers Weekly*, Feb. 15, 2010, at *3-4 (interview with Plaintiff's counsel in which counsel describes 16 similar lawsuits in state and federal

courts and declares, "We are going full steam on it"). The Courts are correctly rejecting these claims. For the same reasons, Plaintiff's claims must be dismissed.

WHEREFORE, Defendants Bank of America, N.A. and JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank respectfully request that the Court grant their Motion to Dismiss Plaintiff's Amended Complaint and enter an Order dismissing with prejudice all of Plaintiff's claims against them and granting whatever other legal or equitable relief the Court deems appropriate.

**JPMORGAN CHASE BANK, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank**

**BANK OF AMERICA, N.A.**

By: /s/ Jon S. Hubbard
　　　Of Counsel

John C. Lynch, Esquire
Virginia State Bar No. 39276
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
E-mail: john.lynch@troutmansanders.com

Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
E-mail: jon.hubbard@troutmansanders.com

*Counsel for Defendant JPMorgan Chase Bank, N.A.
as acquirer of certain assets and liabilities of
Washington Mutual Bank from the Federal Deposit
Insurance Corporation, as Receiver for
Washington Mutual Bank and
Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of July, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

> Christopher E. Brown, Esq.
> R. Michael Smith, Esq.
> 6269 Franconia Road
> Alexandria, VA 22310
> Tel: (703) 924-0223
> Fax: (703) 924-1586
> Email: brownfirm@lawyer.com
> *Counsel for Plaintiff*

I further certify that on the 14th day of July, 2010, a true and correct copy of the foregoing was sent via U.S. mail to the following:

> Professional Foreclosure Corporation of Virginia
> c/o John Burson, Esq.
> 13135 Lee Jackson Memorial Highway
> Fairfax, VA 22033

      /s/ Jon S. Hubbard
Jon S. Hubbard, Esquire
Virginia State Bar No. 71089
TROUTMAN SANDERS LLP
1001 Haxall Point
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1406
Facsimile: (804) 698-5186
E-mail: jon.hubbard@troutmansanders.com

1960791v1