**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| CHADAD C. BOLOURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:10-cv-225 |
| | ) |
| BANK OF AMERICA, N.A., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## Memorandum Opinion

This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's

Amended Complaint (Dkt. No. 23 and 32) brought by Defendants Bank of America, N.A.

("Bank of America") and JPMorgan Chase Bank, N.A. ("JP Morgan"), as acquirer of

certain assets and liabilities of Washington Mutual Bank from the Federal Deposit

Insurance Corporation ("FDIC"), as Receiver for Washington Mutual Bank

("Washington Mutual") and Professional Foreclosure Corporation of Virginia ("PFC")

(collectively, the "Defendants"). For the reasons that follow, Defendants' Motions (Dkt.

No. 23) is hereby GRANTED.

## I.     Background

Plaintiff filed his Amended Complaint on June 4, 2009, alleging claims under the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 *et seq.,* as well as

state law claims for declaratory judgment, quiet title, and negligence. The pertinent

factual allegations in this case, which the Court assumes to be true, are as follows.

On December 13, 2005 Plaintiff executed a $1.2 million promissory note (the

"Note") and a deed of trust (the "Deed") that placed a security interest on his property

(the "Property").[1] Am. Compl. at ¶¶ 7-10. Plaintiff initialed every page of both the Note and Deed before signing the documents. The Note bears an endorsement which reads "PAY TO THE ORDER OF _____ WITHOUT RECOURSE WASHINGTON MUTUAL BANK, FA". The endorsement bears the signature of Cynthia Riley, who is denoted as a "Vice President."

Plaintiff acknowledges that he became "unable to pay" his mortgage loan, and Plaintiff began receiving demands for payment from JP Morgan and PFC. Am. Compl. at ¶¶ 13, 40. On October 8, 2009, Bank of America, through its attorney-in-fact, appointed PFC as substitute trustee by executing and filing a Deed of Appointment of Substitute Trustee. Am. Compl. at ¶¶ 16; Def. Ex. C. It appears a foreclosure sale of the Property was scheduled for November 13, 2009, though that sale has yet to go forward and no further action has proceeded against the property since the inception of this suit. Am. Comp at ¶ 15.

## II.    Standard of Review

Under FED. R. CIV. P. 12(b)(6) an adequate Complaint must contain "sufficient factual matter, accepted as true 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is "facially plausible" when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

---

[1] Plaintiff explicitly references and relies upon the Note and Deed at issue in this case, and do not plausibly dispute the authenticity of these documents. Thus, the Court may consider them at this stage in the case. *See American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

## III. Procedural Posture

Plaintiff filed his original Complaint in the Circuit Court of Fairfax County, Virginia on November 13, 2009. On March 9, 2010, Defendants removed the action to this Court. After Defendants answered (Dkt. No. 5) and filed a Motion for Judgment on the Pleadings (Dkt. No. 7), the Court granted Plaintiff leave to amend on June 10, 2010 (Dkt. No. 22), deeming Plaintiff's "Proposed Amended Complaint" filed on that date. Defendants subsequently moved to dismiss the Amended Complaint on June 24, 2010. Pursuant to Fed.R.Civ.P. 78(b) and Local Rule 7(J), the Court dispensed with oral argument and considers the matter ripe for decision.

## IV. Analysis

Plaintiff's now-familiar allegations[2] challenge the authority of the various named Defendants to enforce the Deed securing the Note executed by Plaintiff.

Despite admitting his inability to make payments on the $1.2 million loan he received after executing the Note and agreeing to secure that debt with his residential property by executing the Deed, Plaintiff argues that none of the named Defendants have the authority to foreclose on his home. However, nothing in Plaintiff's conclusory allegations provides a plausible basis for relief after considering the settled law of negotiable instruments or the enforcement of deeds of trust securing notes after their negotiation.

---

[2] This District has uniformly dismissed cases premised on similar allegations. *See Horvath v. Bank of New York, N.A.*, No. 1:09-cv-01129 (E.D. Va. Jan. 29, 2010); *Pazmino v. LaSalle Bank, N.A.*, No. 1:09cv1173 (E.D. Va. March 18, 2010); *Merino v. EMC Mortgage Corp.*, No. 1:09-cv-1121 (E.D. Va. March 19, 2010); *Areebuddin v. OneWest Bank F.S.B.*, No. 1:09-cv-1083 (E.D. Va. March 24, 2010); *Hammett v. Deutsche Bank*, No. 09-cv-1401 (E.D.Va. March 25, 2010); *Larota-Florez v. Goldman Sachs Mortgage Co.*, No. 01:09cv1181 (E.D.Va. April 8, 2010); *Upperman v. Deutsche Bank Nat'l Trust Co.*, No. 1-10cv-149 (E.D. Va. April 16, 2010); *Zambrano v. HSBC, USA, N.A.*, No. 1:09-cv-996 (E.D. Va. April 23, 2010); *Ruggia v. Washington Mutual*, No. 09-cv-1067 (E.D.Va. May 13, 2010).

As a preliminary matter, Plaintiff takes issue with this Court's reference to Article 3 of Virginia's Uniform Commercial Code ("UCC") in prior, similarly-postured cases. Plaintiff argues that those cases, like the present one, only implicated an *in rem* action proceeding via a deed of trust, and thus "the UCC is inapplicable." Pl. Br. at 9, 12. While Plaintiff is generally correct that Article 9 of the UCC, VA Code §8.9A, is inapplicable to "a creation or transfer of an interest in or lien on real estate," VA Code §8.9A-109(d)(11)(A), it is precisely because Plaintiff's counsel has repeatedly attacked the validity of the debts secured by the deeds of trust that reference to Article 3 of the UCC is necessary.[3] Of course, ascertaining the enforceability of a promissory note is not the final step in the Court's analysis, but it remains a necessary one, given that the Court must first determine the validity of a note's negotiation in order to determine whether the security of a deed of trust runs with the note or whether a substitute trustee was properly appointed. *See Williams v. Gifford*, 139 Va. 779, 784 (1924); *see also Stimpson v. Bishop*, 82 Va. 190, 200-01 (1886). Plaintiff's argument now that the UCC is inapplicable is as illogical as it is disingenuous.[4]

---

[3] *See* Am. Compl. at ¶ 41 ("Plaintiff disputes any debt is owed to Defendant [Bank of America]"); *Merino*, 1:09-cv-1121 Am. Compl. at ¶ 73 ("Plaintiff disputes any debt is owed to [any defendant]").

[4] The same is true of Plaintiff's citation to *Tiemeyer v. Residential Credit Colutions, Inc.*, Va. Cir. Ct. No. CL10002173 (Va. Cir. Ct. 2010), a state-court action pursued by the same attorney acting as Plaintiff's counsel in this case. In *Tiemeyer*, the Plaintiff borrower argued that "the Court should look to VA Code Ann. §8.3A-309 only for the purpose of determining the necessary requirements of a lost note affidavit." Pl. Br. at 9. The Alexandria Circuit Court declined to do so, finding that the requirements of VA Code Ann. §55-59.1(B) were sufficiently met, refusing to enjoin the pending foreclosure despite a lost note. Tiemeyer then petitioned to the Supreme Court of Virginia pursuant to Va. Code 8.01-626. In a one-paragraph opinion, the court vacated the circuit judge's order and remanded the case for the circuit court to reconsider the application of VA Code Ann. §8.3A-309 "to the facts of this case." The Circuit Court did so, but again rejected Tiemeyer's argument and again refused to enjoin the pending foreclosure.

The *Tiemeyer* case offers little guidance in this case. That the plaintiff in *Tiemeyer* was able to petition a court pursuant to Va. Code §55-59.1(B) in the instance of a lost note does not add any credence or authority to Plaintiff's argument in this case, where Defendants possess the original Note and Deed. Moreover, the issue of VA Code Ann. §8.3A-309's applicability to cases dealing with lost notes has no bearing on this Court's reference to the Virginia UCC in determining the rights of the parties under the Note produced by Defendants in this case.

Under Virginia law, the holder of an instrument or a nonholder in possession of the instrument with the same rights as the holder may enforce the instrument. Va. Code. Ann. §8.3A-301. Indeed, an individual may be "entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.* An individual becomes the "holder" of an instrument through the process of negotiation, and if "an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder." *Id.* at §8.3A-201(b). On the other hand, if an instrument has a blank endorsement, it is considered "payable to bearer," and may be negotiated by transfer of possession alone. *See* VA. Code §§ 8.3A-201(b); 8.3A-205.

Finally, absent a contrary provision, notes are generally freely transferable, and the transferee retains the right to enforce the instrument. Under Va. Code Ann. § 8.3A-203(b), the "[t]ransfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument. . ." *See also Johnson v. Ferris*, 58 Va. Cir. 7, 2001 WL 1829719, at *4 (May 31, 2001 Va. Cir. Ct.) (noting that "in the absence of an express provision against assignment of a contract not involving personal skill, trust, or confidence, the contract is freely assignable" and citing *J. Maury Dove Co. v. New River Coal*, 150 Va. 796 (Va. 1928)).

The explicit terms of the Note at issue here indicate that they are freely transferable. *See* Note at ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder"). As the Virginia Supreme Court noted long ago, the promise to pay a mortgage is a promise to pay a "negotiable note[] secured by

5

[the mortgage] to the respective payees thereof, or to the person or persons to whom [it] might...be negotiated..." *Blanton v. Keneipp*, 155 Va. 668, 681 (Va.1931).

Plaintiff concedes that he has ceased making payments on the Note. In Virginia, the obligation to pay an instrument can only be "discharged as stated in [Title 8.3A] or by an act or agreement with the party which would discharge an obligation to pay money under a simple contract." Va. Code § 8.3A-601. Plaintiff offers no allegation that he reached an agreement with the noteholder or took any other action which would suffice to discharge the obligation under the Virginia statute. Thus, "to permit the parties to the [instrument] to object to its payment, on any of the grounds stated, would greatly impair the negotiability of bills and notes; their most distinguishing, most useful, and most valued feature." *Whitworth v. Adams*, 1827 WL 1200 at *45 (Va. 1827).

Next, under Virginia law, when a note is negotiated, the deed of trust securing that debt necessarily runs with it. *See Williams*, 139 Va. at 784; *see also Stimpson*, 82 Va. at 200-01 ("It is undoubtedly true that a transfer of a secured debt carries with it the security without formal assignment or delivery."). Moreover, as the Virginia Supreme Court has recognized, when deeds of trust and their underlying notes are "separate and distinct" documents,

> ... in appropriate circumstances, we have recognized that 'notes and contemporaneous written agreements executed as part of the same transaction will be construed together as forming one contract.' So long as neither document varies or contradicts the terms of the other, terms of one document which clearly contemplate the application of terms in the other may be viewed together as representing the complete agreement of the parties.

*Virginia Housing Development Authority v. Fox Run Ltd. Partnership*, 255 Va. 356, 364-365 (Va. 1998). Thus, a deed of trust continues to secure the holder of a note and nothing in the negotiation of the note renders it unsecured.

In turn, pursuant to Va. Code § 55-59(9), "[t]he party secured by the deed of trust, or the holders of greater than fifty percent of the monetary obligations secured thereby" are empowered to appoint a substitute trustee, "regardless of whether such right and power is expressly granted in such deed of trust." *Id.* Central to Plaintiff's argument is that Defendants are not the "party secured by the deed of trust" or "the holder of greater than fifty percent of the monetary obligations secured thereby," and thus were not empowered to name a substitute trustee. However, as discussed above, the Note is possessed by Bank of America, and is thus the "party secured by the deed of trust." Once appointed, the substitute trustee is empowered by Va. Code § 55-59(7) to foreclose and sell property provided as security for the Note.

Finally, Plaintiff again advances the argument in his Brief that because "credit default swaps" had been purchased on Plaintiff's loans, Plaintiff is thereby discharged from his obligations under the promissory note due to some sort of impermissible "double recovery." Pl. Br. at 21. However, as this District has held, and this Court agrees, "[Plaintiff] provides no factual or legal basis, and the Court finds none, to support his contention that because [Plaintiff's] default triggered insurance for any losses caused by that default or 'credit enhancements,' he is discharged from the promissory notes and the Property is released from the deeds of trust." *Horvath v. Bank of New York*, 2010 WL 538039 at *2 (E.D.Va. January 29, 2010). Further, Plaintiff's argument seems to misconstrue the nature of a credit default transaction. *See Larota-Florez*, No.

01:09cv1181 at 13 (E.D.Va. April 8, 2010) (noting that "[a]ny [credit default swap] 'payout' is bargained for and paid for by the [credit default swap] buyer under a separate contract." (citing *In re Worldcom*, 346 F. Supp.2d 628, 651 n.29 (S.D.N.Y. 2004)).

### a. Count I: Declaratory Judgment and Count II: Negligence

Count I of the Amended Complaint seeks a declaratory judgment from the Court declaring that Defendant Bank of America[5] "has no legal or equitable interest in the Property, has no privity of contract with Plaintiff, and has no authority to enforce the security instrument (Deed of Trust)." Am. Compl. at ¶ 47. Count II of Plaintiff's Amended Complaint alleges that Bank of America "has negligently presumed its authority to enforce the terms of the Deed of Trust" and JP Morgan "has negligently executed the Appointment of Substitute Trustee as attorney in fact for [Bank of America], despite. . . being fully aware that [Bank of America] does not own the Note or Deed of Trust." Am. Compl. at ¶¶ 51, 52. The Amended Complaint further alleges that PFC "negligently failed to perform reasonable due diligence when the request to proceed to foreclose was made by [Bank of America] by failing to make any inquiry into whether BoA was authorized or had the authority to take actions under the Deed of Trust. . . ." Am. Compl. at ¶ 50.

As Defendants note, these claims are inconsistent with Virginia law and the Commonwealth's status as a non-judicial foreclosure state. *See* Va. Code §§ 55-59.1-59.4. Given the Court's foregoing discussion of the transferability of promissory notes and the deeds that secure them, the Court simply has no basis to award the declaratory

---

[5] Though the Amended Complaint states that Count I is asserted against "Versus BoA and PFC" (Bank of America and Professional Mortgage Corporation), the entirety of Count I seems addressed toward Bank of America and makes no mention of Professional Mortgage Corporation. Nonetheless, to the extent Count I asserts a claim against PFC, that claim is dismissed for the reasons stated above.

relief sought by Plaintiff, nor does Plaintiff plead a plausible claim for negligence against any of the Defendants.

### b. Count III: Quiet Title

In Count III, Plaintiff asserts a claim to quiet title to the property in dispute. "An action to quiet title is based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title." *Maine v. Adams*, 277 Va. 230, 238 (2009). This claim resembles Count I, and essentially seeks a declaration that none of the Defendants hold any claim to or interest in the property, but does so in a wholly conclusory fashion, without any plausible factual pleadings in support.

Again, given the Court's foregoing discussion, there is no basis to award the relief sought by Plaintiff in Count III of his Amended Complaint.

### c. Count IV – Violation of the FDCPA

Count IV of the Amended Complaint alleges a violation of the FDCPA against Defendant PFC. In order to establish a FDCPA violation, Plaintiffs must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *See Dikun v. Streich*, 369 F. Supp. 2d 781, 784-85 (E.D. Va. 2005). The FDCPA defines a debt collector as "any person who uses an instrumentality of interstate commerce or the mails in any business *the principal purpose of which is the collection of any debts*, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6)(emphasis added).

This District recently emphasized that "[m]ortgage servicing companies and trustees exercising their fiduciary duties enjoy broad statutory exemptions from liability under the FDCPA." *Horvath*, 2010 WL 538039 (E.D. Va. Jan. 29, 2010)(citing 15 U.S.C. §1692a(6)(F)(i) ("The term [debt collector] does not include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement") and 5 U.S.C. §1692a(6)(F)(iii) ("The term [debt collector] does not include... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.")).

Further, as this District has also previously recognized, "[i]t is well-settled that provisions of the FDCPA generally apply only to debt collectors...[a]nd, creditors are not liable under the FDCPA." *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 717 (E.D.Va. 2003). More specifically, "creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA" *Id.*; *see also Warren v. Countrywide Home Loans, Inc.*, 2009 U.S. App. LEXIS 18191 (11th Cir. Aug. 14, 2009) ("several courts have held that an enforcer of a security interest, such as a mortgage company foreclosing on mortgages of real property falls outside the ambit of the FDCPA...").

Assuming, *arguendo*, that the FDCPA applies in this case, the Amended Complaint contains four brief paragraphs under Count IV, the sum of which allege that PFC violated the FDCPA by "repeatedly" misrepresenting that "JPMorgan was the creditor in its correspondence to Plaintiff." Am. Compl. at ¶ 62. While the false

representation of a creditor's name may constitute a "false representation to collect or attempt to collect any debt under section 1692e(10) [of the FDCPA]," *Hepsen v. J.C. Christensen and Associates, Inc.*, 2009 WL 3064865 at \*5 (M.D.Fla. Sept. 22, 2009), the Court finds that these allegations by Plaintiff are without merit. Importantly, a letter dated October 6, 2009 written to Plaintiff by PFC's attorneys, the law firm of Shapiro & Burson, specifically identifies the loan holder as BANK OF AMERICA NATIONAL ASSOCIATION." Def. Ex. C, p.1. Further, attached to that letter was the Notice Required by the Fair Debt Collections Practices Act which also clearly states that "the creditor to whom the debt is owed is BANK OF AMERICA NATIONAL ASSOCIATION." Def. Ex. C, p.4. These documents both pre-date the October 22, 2009 letter alleged in the Amended Complaint, and thus forestall any argument that PFC misrepresented that JPMorgan was the creditor in its correspondence to Plaintiff. To the extent that Plaintiff relies upon this correspondence as a basis for his FDCPA allegations, he asserts no basis for relief.

To the extent that Plaintiff's FDCPA claim, like his other claims, relies on the specious premise that the named Defendants somehow have no right, title, or interest in the Deed or the Note, Plaintiff offers no plausible basis on which the Court can agree with this premise. Count IV of the Amended Complaint must also be dismissed.

## V.    Conclusion

Plaintiff's Amended Complaint fails to state a plausible basis on which relief may be granted. As such, all counts must be dismissed as to Defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and Professional Foreclosure Corporation of

Virginia.  As any further effort to amend would prove futile, this case is DISMISSED

WITH PREJUDICE as to these Defendants.

An appropriate order shall issue.

Alexandria, Virginia
August 24, 2010

/s/
Liam O'Grady
United States District Judge